***E-FILED - 3/31/09***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELWIN K. LAY, II, | ) | No. C 03-4408 RMW (PR) |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| MICHAEL L. FRIEDMAN, | ) ) | (Docket No. 28) |
| Defendant. | ) ) | |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendant Dr. Michael L. Friedman at the Correctional Training Facility ("CTF") was deliberately indifferent to his medical needs. Defendant has filed a motion for summary judgment (docket no. 28). Although given an opportunity to do so, plaintiff did not file an opposition.

After a review of the record, the court concludes that plaintiff has not shown evidence that precludes summary judgment. Accordingly, the court GRANTS defendant's motion for summary judgment.

**STATEMENT OF FACTS**[1]

On July 25, 2002, plaintiff slipped on some water on the floor at CTF and fell on his left

---

[1] Unless otherwise noted, all facts presented below are undisputed.

Order Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.03\Lay408grantmsj.wpd

elbow. (Complaint, p. 3; Decl. Friedman, Ex. A, p. 47.) Plaintiff alleges that, due to the fall, he sustained injuries to his upper left arm, left wrist, right side rib cage, and right side shoulder. (Complaint, p. 3.) Plaintiff's medical records demonstrate that although he complained of injury to his left elbow and wrist, he made no mention of any pain to his ribs.[2] (Decl. Friedman, Ex. A, p. 47, 49.) Accordingly, Dr. C. Robertson ordered an x-ray of plaintiff's left elbow and wrist. (Id.) The x-rays showed a fracture of the left radial head. (Id. at 50.) Dr. Robertson informed plaintiff that he would be seen by a specialist. (Complaint, p. 3.)

On July 26, 2002, plaintiff was prescribed Tylenol #3 for pain relief and referred to the orthopedic department with an appointment scheduled for July 30, 2002. (Decl. Friedman, Ex. A. p. 45.) Plaintiff and several correctional staff attempted to obtain unspecified additional medical attention for plaintiff without success. (Complaint, p. 3a.)

On July 30, 2002, Dr. Richman examined plaintiff at Natividad General Hospital and ordered x-rays of plaintiff's left arm and wrist. (Complaint, p. 3a.) The x-rays revealed a broken bone, and Dr. Richman ordered plaintiff's arm to be placed in a splint and sling for two weeks. (Id.) On August 9, 2002, Dr. Richman saw plaintiff again at Natividad General Hospital where he ordered additional x-rays of plaintiff's arm. (Id.) The x-rays revealed some healing, but Dr. Richman ordered plaintiff's arm to be placed in a cast for four weeks. (Id.)

On September 3, 2002, plaintiff was seen by medical staff at CTF and referred to Dr. Sinnaco. (Decl. Friedman, ¶ 10.) On September 10, 2002, plaintiff told Dr. Luca at CTF that he had no more chest pain. (Decl. Friedman, Ex. A, p. 43.) Dr. Luca ordered an x-ray of plaintiff's arm, which revealed the same fracture in the left radial head as before, and no other fracture or acute injury of the left humerus. (Id. at 51.) Dr. Sinnaco saw plaintiff and remarked that his arm had healed and removed his cast. (Id. at 43.)

Plaintiff alleges that he is still suffers from severe pain in his right ribs and shoulder, and his left elbow has lost much movement because he never received proper physical therapy.

---

[2] The court notes that plaintiff's medical records also show that eight days prior to plaintiff's slip-and-fall accident, he was seen by medical staff for pain in his right ribs from a prior injury, that had since healed. (Decl. Friedman, ¶ 6; id., Ex. A, p. 47.)

1  (Complaint, p. 3b.)  Further, plaintiff alleges that he was denied proper and prompt medical care,
2  and such denial was intentional, malicious, and deliberately indifferent.  (Id.)

## DISCUSSION

4  A.      Standard of Review

5       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
6  that there is "no genuine issue as to any material fact and that the moving party is entitled to
7  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect
8  the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute
9  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
10  verdict for the nonmoving party.  Id.

11      The party moving for summary judgment bears the initial burden of identifying those
12  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
13  issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving
14  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
15  reasonable trier of fact could find other than for the moving party.  But on an issue for which the
16  opposing party will have the burden of proof at trial, as is the case here, the moving party need
17  only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.
18  at 325.

19      Once the moving party meets its initial burden, the nonmoving party must go beyond the
20  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
21  genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over
22  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
23  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is not the task of the court to
24  scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279
25  (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable
26  particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to
27  make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex Corp
28  v. Catrett, 477 U.S. at 323.

As there has been no opposition or evidence filed by plaintiff, the court has treated his verified complaint as an opposing affidavit under Rule 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & n.10-11 (9th Cir. 1995).

B.      Plaintiff's Claim

Plaintiff claims that defendant has been deliberately indifferent to his serious medical needs. Defendant asserts that he is entitled to summary judgment as a matter of law because he cannot be liable via vicarious liability. Further, defendant asserts that the undisputed facts demonstrate that he nor the medical staff at CTF were not deliberately indifferent to plaintiff's needs.[3]

   1.      Vicarious Liability

Defendant asserts that the court should grant summary judgment because plaintiff seeks to hold him liable based only on a theory of vicarious liability, which is not a basis for asserting liability under section 1983.

Liability may be imposed on an individual defendant under § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. Id. at 633. Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights. Id. at 634. A supervisor may be liable under § 1983 upon a showing of (1) "personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.3d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or

---

[3] It appears defendant is not disputing the seriousness of plaintiff's medical needs.

1  directed the violations, or knew of the violations and failed to prevent them." <u>Taylor v. List</u>, 880
2  F.2d 1040, 1045 (9th Cir. 1989). "There is no respondeat superior liability under section 1983."
3  <u>Id.</u>

4    Plaintiff has not raised a triable issue of fact that defendant Friedman was deliberately
5  indifferent to his medical needs. It is undisputed that defendant Friedman did not treat or see
6  plaintiff regarding plaintiff's complained-of injuries. Further, plaintiff fails to demonstrate any
7  causal connection between defendant and his constitutional rights, nor does plaintiff assert that
8  defendant had any duty or responsibility to him. Defendant asserts that his area of expertise was
9  as a psychiatrist and that, had he examined plaintiff or treated plaintiff, it would only have been
10 in the area of psychiatry. (Decl. Friedman, ¶ 5.) Plaintiff does not dispute defendant's
11 statements. In fact, plaintiff fails to offer any evidence that defendant Friedman participated in
12 any decision about his medical care or knew about any alleged violations, let alone that he was
13 deliberately indifferent to his medical needs.

14   Accordingly, viewing the facts in the light most favorable to plaintiff, the court GRANTS
15 summary judgment to defendant.

16   2. <u>Deliberate Indifference</u>

17   Even assuming that plaintiff could show defendant was culpable for his supervision of
18 medical staff employees, plaintiff fails to demonstrate that those employees were deliberately
19 indifferent. Plaintiff claims that unnamed medical staff failed to provide him with prompt and
20 proper medical treatment regarding his left arm, right ribs and right shoulder from the July 25,
21 2002 slip-and-fall incident, and that such failure was deliberate and intentional.

22   Deliberate indifference to a prisoner's serious medical needs violates the Eighth
23 Amendment's proscription against cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>, 429
24 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of
25 two elements: the seriousness of the prisoner's medical need and the nature of the defendant's
26 response, i.e., whether it is deliberate indifference, to that need. <u>McGuckin v. Smith</u>, 974 F.2d
27 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104
28 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

1    A prison official is deliberately indifferent if he knows that a prisoner faces a substantial
2 risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.
3 Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal
4 recklessness). The prison official must not only "be aware of facts from which the inference
5 could be drawn that a substantial risk of serious harm exists," but "must also draw the
6 inference." Id. Consequently, in order for deliberate indifference to be established, there must
7 exist both a purposeful act or failure to act on the part of the defendant and harm resulting
8 therefrom. See McGuckin, 974 F.2d at 1060.
9    However, a claim of a difference of opinion between a prisoner patient and a medical
10 doctor, is not enough to make out a violation of the Eighth Amendment. See Toguchi v. Chung,
11 391 F.3d 1051, 1059-60 (9th Cir. 2004). Similarly, a showing of nothing more than a difference
12 of medical opinion as to the need to pursue one course of treatment over another is insufficient,
13 as a matter of law, to establish deliberate indifference. See id. at 1058, 1059-60. In order to
14 prevail on a claim involving choices between alternative courses of treatment, a plaintiff must
15 show that the course of treatment the doctors chose was medically unacceptable under the
16 circumstances and that he or she chose this course in conscious disregard of an excessive risk to
17 plaintiff's health. Id. at 1058.
18    Plaintiff fails to demonstrate that the prison medical staff's course of treatment was
19 medically unacceptable under the circumstances. See id. Defendant submitted plaintiff's
20 medical records from CTF, which showed that plaintiff was seen the day of his slip-and-fall
21 (Decl. Friedman, Ex., A, p. 50), x-rayed (id. at 46), prescribed a strong pain reliever (id. at 45),
22 and, the following day, referred to an outside orthopedic department for further evaluation (id. at
23 45). After receiving treatment in the form of a splint and a cast at the outside orthopedic
24 department, plaintiff was again seen by CTF medical staff and his left arm x-rayed. (Id. at 51.)
25 Medical staff determined that his left radial head still showed a fracture but was healing. (Id.)
26 As a result, medical staff removed plaintiff's cast. (Id.)
27    Here, plaintiff's allegation regarding the failure to tend to and treat the injuries to his left
28 arm appear to amount to nothing more than a difference of opinion in diagnosis and treatment.

Order Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.03\Lay408grantmsj.wpd        6

Plaintiff fails to provide evidence that defendant doctors' course of treatment was "medically unacceptable." Toguchi, 391 F.3d at 1058; see also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."). The medical records submitted demonstrate that medical staff prescribed a pain reliever, referred plaintiff to an outside orthopedic center, and ordered several x-rays to keep track of his complained of broken arm. Plaintiff fails to demonstrate what the medical staff did or did not do that was "medically unacceptable" and that they chose this course of treatment in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058.

To the extent plaintiff claims that he sustained injuries to his right ribs and shoulder as a result of the slip-and-fall accident, he fails to allege that he complained of such injuries to any medical staff as a result of his slip-and-fall. In fact, plaintiff's medical records contradict his allegation: over a week prior to his slip-and-fall incident, plaintiff was seen by medical staff for a prior fracture to his right ribs that had healed. (Decl. Friedman, Ex. A, p. 47, 49.) Plaintiff fails to demonstrate that he told any CTF medical staff at the time of his slip-and-fall that he injured his right ribs and shoulder as well as his left arm. (Id. at 45, 46.) Further, on September 10, 2002, plaintiff told Dr. Luca at CTF that he had no more chest pain. (Id. at 43.) In sum, plaintiff does not show that any CTF medical staff should have been aware of a right rib or shoulder injury in connection with this slip-and-fall incident, much less that they purposefully failed to act with respect to those injuries. See McGuckin, 974 F.2d at 1060.

The court finds that plaintiff's submissions lack particularity sufficient to preclude summary judgment. See Keenan, 91 F.3d at 1279. Viewing the facts in the light most favorable to plaintiff, the evidence does not demonstrate that the defendant was deliberately indifferent to plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment right.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED. The clerk shall enter judgment and close the file.

This order terminates docket no. 28.

1    IT IS SO ORDERED.

2    DATED: __3/27/09_____            *Ronald M. Whyte*
                                       _____
3                                      RONALD M. WHYTE
                                       United States District Judge